**AMERICAN BANK OF COMMERCE,**
Appellee,

v.

**CITY OF McALESTER, a Municipal
Corporation, Appellant.**

No. 48765.

Supreme Court of Oklahoma.

Sept. 28, 1976.

Rehearing Denied Nov. 2, 1976.

As Corrected Nov. 22, 1976.

**582**

City of McAlester (appellant) to perform certain construction work for the City's Park and Recreation Department.

A nonassignment paragraph in the construction contract provided:

"The Contractor shall not assign the whole or any part of this contract or any moneys due or to become due hereunder without written consent of the Owner. In case the Contractor assigns all or any part of any moneys due or to become due under this contract, the instrument of assignment shall contain a clause substantially to the effect that it is agreed that the right of the assignee in and to any moneys due or to become due to the Contractor shall be subject to prior claims of all persons, firms and corporations of service rendered or materials supplied for the performance of the work called for in this contract."

On April 12, 1973, contractor Irvine obtained a $15,000.00 loan from the American Bank of Commerce (appellee). To secure this loan, Irvine assigned to the Bank:

"* * * all monies and rights to payment now due which may hereinafter become due for goods sold or to be sold or leased to or to be leased or for services rendered or to be rendered to, and all monies and rights to payment now due or which may hereafter become due, whether earned or yet to be earned by performance, under any contract or contracts heretofore or hereafter entered into with City of McAlester—Parks and Recreation Department together with all proceeds thereof, as a surety for all payment of all debts, obligations, and liabilities now or hereafter existing, absolute or contingent, of Debtor, or anyone or more of them, to Secured Party."

The assignment also appointed the American Bank of Commerce as, "true, lawful and irrevocable attorney to demand, receive and enforce payment and to give receipts, releases, satisfactions for and to sue for all monies payable to Debtor. . . ."

William H. Layden, McAlester, for appellee.

Donald R. Hackler, McAlester, for appellant.

DAVISON, Justice.

In January, 1973, the partnership of J. B. Irvine & Son, general contractors, entered into a construction contract with the

On April 13, 1973, a copy of the assignment was delivered to McAlester's City Manager, Mr. Charles Gramlich, who acknowledged receipt of the assignment by signing his name and position after an acknowledgement clause which read:

"RECEIPT is hereby acknowledged of the above notice and copy of the above mentioned Surety Agreement. No previous assignment or claims against the above described accounts or contract rights have been received. This notice and copy received 13th of April, 1973."

The assignment was never presented to the McAlester City Council, nor did the City Council ever take any action regarding the assignment.

Beginning on May 14, 1973, approximately one month after McAlester's City Manager received a copy of the assignment, the City of McAlester made payments due under the contract directly to contractor Irvine as follows:

| | |
|---|---|
| May 14, 1973 | $ 30,101.58 |
| June 13, 1973 | 39,980.43 |
| July 10, 1973 | 7,842.15 |
| July 11, 1973 | 31,068.36 |
| August 15, 1973 | 11,124.40 |
| | $120,116.92 |

At the time the first three payments listed above were made, there were no liens or prior claims against contractor Irvine.

No consent in writing to the assignment was ever executed by the City of McAlester or any of its agents. On August 20, 1974, a claim of the American Bank of Commerce against the City of McAlester for assignments of account and contract rights of contractor Irvine, in the sum of $15,000.00 was presented to the City and on August 21, 1974, the claim was denied by the City Council.

Prior to April 13, 1973, other assignments in the same form and of the same nature to American Bank of Commerce were received and honored by the City of McAlester in the regular course of business, but none of those assignments were assignments of money or right under contracts containing the nonassignment provision set forth above.

At the trial court level, where the facts set forth above were stipulated to by both parties, the court granted summary judgment in favor of the American Bank of Commerce. The City of McAlester appeals from that court's decision.

Appellant urges that the assignment made by contractor Irvine was void and invalid, for the assignment was made without the written consent of the City of McAlester, as required by the nonassignment provision in the construction contract.

The first issue raised is whether the provisions of 12A O.S. § 9–318(4) have an effect upon the nonassignment clause in the construction contract.

Title 12A O.S. § 9–318(4) provides:

"A term in any contract between an account debtor and an assignor which prohibits assignment of an account or contract right to which they are parties is ineffective."

This statutory language on its face makes it clear that the nonassignment clause in the contract would have no effect if the contract was within the scope of Article 9 of the Uniform Commercial Code. We must therefore first determine if the transaction involved comes within the scope of that Article; to do so, we must consult Article 9 itself; we will, however, first consider the cases cited by appellant.

In support of its proposition that the transactions before the court are not within the scope of Article 9, appellant cites two cases: *Mingledorff's, Inc. v. Hicks,* 133 Ga.App. 27, 209 S.E.2d 661 (1974), and *Paul v. Chromalytics Corp.,* 343 A.2d 622 (Superior Court Del.1975). Both cases are easily disposed of. The *Paul* case dealt with a *sale* of contract rights as part of a sale of a business—such a transaction is expressly excluded from the scope of Article 9 in § 9–104(f) of the Un-

iform Commercial Code; whereas, the type of transaction now before us is not.

■ In the *Mingledorff* case, a contractor entered into a contract for installation of heating and air conditioning equipment. The contract contained a clause prohibiting assignment of the contract or any part thereof without the written consent of the owner. In disregard of the nonassignment provision, the contractor assigned a portion of the money due under the contract to a third party. In holding that the nonassignability clause was valid, the court in *Mingledorff* indicated that the nonassignment clause was not affected by Uniform Commercial Code §§ 2–210(2) and 9–318(4) because the transaction involved was not one for the sale of goods but was a contract for service and labor with an incidental furnishing of equipment and materials. Although we agree with the Georgia Court that the provisions of Article 2 of the Uniform Commercial Code would not be applicable if a sale of goods was not involved, we do not adopt that court's rationale limiting the scope of Article 9 to transactions involving the sale of goods—for we find no provisions in the Uniform Commercial Code so limiting the scope of Article 9.

Courts have for quite some time construed prohibitory or restrictive terms against assignment of rights under contracts in such a way as to make assignments possible. Comment 4 under § 9–318. of the Uniform Commercial Code describes the erosion of the doctrine against assignment as follows:

"It is only for the past hundred years that our law has recognized the possibility of assigning choses· in action. The history of this development, at law and equity, is in broad outline well known. Lingering traces of the absolute common law prohibition have survived almost to our own day.

There can be no doubt that a term prohibiting assignment of proceeds was effective against an assignee with notice through the nineteenth century and well

into the twentieth. Section 151 of the Restatement of Contracts (1932) so states the law without qualification.

That rule of law has been progressively undermined by a process of erosion which began much earlier than the cited section of the Restatement of Contracts would suggest. The cases are legion in which courts have construed the heart out of prohibitory or restrictive terms and held the assignment good. [Cites omitted].

This gradual and largely unacknowledged shift in legal doctrine has taken place in response to economic need: as accounts and contract rights have become the collateral which secures an ever increasing number of financing transactions, *it has been necessary to reshape the law so that these intangibles, like negotiable instruments and negotiable documents of title, can be freely assigned.*

Subsection (4) thus states a rule of law which is widely recognized in the cases and which corresponds to current business practices. It can be regarded as a revolutionary departure only by those who still cherish the hope that we may yet return to the views entertained some two hundred years ago by the Court of King's Bench." (Emphasis added).

Title 12A O.S. § 9–102(1) provides, in part that Article 9 so far as it concerns any personal property and fixtures within the jurisdiction of this State applies to:

"(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; · · ·"

Comment 1 to § 9–102 of the Uniform Commercial Code Comments, as amended in 1966, provides:

·"(1) Except for sales of accounts, contract rights and chattel paper, the principal test whether a transaction comes un-

der this Article is: is the transaction intended to have effect as security?"

■ The language of 12A O.S. § 9–318(4), together with the Comments following that section in the Official Text of the Uniform Commercial Code, demonstrate that the intent of the section is to make contract rights and accounts freely assignable, thus enabling such intangible rights to be freely used as security in commercial transactions. The official comment of the Uniform Commercial Code following § 9–318 provides in part:

"4. Subsection (4) breaks sharply with the older contract doctrines by denying effectiveness to contractual terms prohibiting assignment of accounts and contract rights—that is, sums due and to become due under contracts of sale, construction contracts and the like. Under the rule as stated an assignment would be effective even if made to an assignee who took with full knowledge that the account debtor had sought to prohibit or restrict assignment of the account or of the money to be earned under the contract."

Therefore, even though the initial construction contract, in and of itself, did not intend to effect a security, the contract is affected by § 318 of Article 9, because the legislative intent, as shown by the language of the provision, was to make accounts and contract rights freely assignable—this being the case, parties by contract should not and are not permitted to circumvent the intent of the statute. Section 9–318 merely codified this prohibition which is necessary to maintain the free assignability of accounts and contract rights.

■ In adopting § 9–318(4) of the Uniform Commercial Code, the Legislature clearly intended, as a matter of law, to make contract rights and accounts freely assignable. We therefore hold that any contract provisions which prohibit or restrict the assignability of accounts or contract rights to be contra to the law, and thus null and void and of no effect this being so, contractor Irvine's assignment of his rights under the construction contract with the City of McAlester, to American Bank of Commerce was an effective and valid assignment under the Code.

■ Both at the trial court level and on appeal, the appellant urges that the assignment made by the contractor was invalid because the assignment was made in violation of 61 O.S.1971 § 39 which provides:

"No contract awarded to the lowest responsible bidder or the highest responsible bidder, as the case may be, shall be assignable by the successful bidder without written consent of the contracting authority evidenced by resolution. . . . ."

We would agree with appellant that, under the above quoted statute, public work contracts affected by the statute cannot be assigned, but we disagree with appellant as to its interpretation of the statute. The question presented is one going to the scope of the prohibition against assignment—does it mean only that the builder shall not delegate performance of his duties, or not only this, but also that he shall not assign his rights to the payments to which he is or will be entitled?

We hold that the intent of the statute was to prohibit delegation of duties under contracts affected, and not to prohibit assignments of rights to payments under the contract. We therefore hold that the assignment by the contractor to the Bank was valid. We will now consider the effect of that assignment on the rights and liabilities of the parties involved.

■ Title 12A O.S. § 9–318(3) establishes a duty upon an account debtor to make payments to the assignee, once the account debtor has received proper notification of the assignment:

"The account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee."

Thus, if the City of McAlester received proper notice of contractor Irvine's assignment to the Bank, the City had a duty to make payments directly to the assignee Bank. To determine whether the record before the trial court demonstrates that the City of McAlester had received proper notice of the assignment, we again consult the Uniform Commercial Code provisions.

Title 12A O.S. § 1–201, is the definition section of the Uniform Commercial Code, which generally applies to all Articles of the Code. Section 1–201(25) defines "notice" as follows:

"A person has 'notice' of a fact when

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it. 'Discover' or 'learn' or a word or phrase of similar import refers to knowledge rather than to reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this Act."

The following paragraph, 12A O.S. § 1–201(26) reads:

"A person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person 'receives' a notice of notification when

(a) it comes to his attention; or

(b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications."

■ The undisputed facts in the record before the trial court demonstrated that a true copy of the assignment was delivered to McAlester's City Manager, who in the past had received notice of similar, though not like assignments, which were honored by the City. We hold that these facts were, under the above definitions, sufficient to constitute notice. We also hold that, under 12A O.S. § 9–318(3), as cited above, such notice gave rise to a duty upon the account debtor to make payments directly to the assignee Bank, and that the undisputed facts before the trial court clearly demonstrated that the duty was breached, when after notice of the assignment, the City continued to make payments to the contractor rather than to the assignee Bank.

■ Appellant lastly urged that even if the assignment were valid and the notice of it sufficient, the claim of the assignee Bank is a claim against the funds due the contractor which were retained by the City, and the City's liability to the Bank is limited to the amount of those funds. We do not agree with appellant's contention. In *American Inv. Co. v. Baker,* 104 Okl. 95, 230 P. 724 (1924), we held that payments by a debtor, made to an assignor, after notice of the assignment, is no defense to the claims of the assignee. In *Empire Discount Corp. v. William E. Bouley Co.,* 5 Misc.2d 228, 160 N.Y.S.2d 395 (S.Ct. Monroe County 1957), the court stated:

"The notice of an assignment puts a debtor on guard, and if thereafter he pays any money to the assignor which under the terms of the assignment belongs to the assignee, or if he does anything prejudicial to the rights of the assignee he is liable for the resulting damage."

We concur with the New York Court's rationale, which is in accord with out past holding.

If we were to embrace the contention that the City's liability to the Bank under the assignment is limited to the amount of retained funds held by the City, we would be allowing the City to reduce its total liability to the Bank by subtracting the amount of the payments wrongfully made

to the contractor from the total liability. In so doing, we would, in essence, be allowing appellant to use such payments as a defense against the assignee. Such a holding would be contra to our prior decision and to the intent of 12A O.S. § 9–318(3). We therefore hold that the liability of the City of McAlester to the assignee Bank is not limited to the amount of the funds retained. Having so ruled, it is unnecessary for us to consider any questions regarding priorities relating to the retained funds.

Having held (1) that the assignment by contractor Irvine to the Bank was valid, (2) that the City of McAlester received adequate notice of the assignment, and (3) that the liability of the City to the Bank is not limited to the retained funds held by the Bank, we hold that under the facts presented to the trial court, the Bank was entitled, as a matter of law, to summary judgment, and we affirm the trial court's action.

Affirmed.

WILLIAMS, C. J., HODGES, V. C. J., and IRWIN, LAVENDER, BARNES and DOOLIN, JJ., concur.

SIMMS, J., concurs in result.