421 So.2d 1056 (1982)
The MISSISSIPPI BANK
v.
NICKLES & WELLS CONSTRUCTION COMPANY, and The Western Casualty & Surety Company.
No. 53409.
Supreme Court of Mississippi.
November 10, 1982.
Heidelberg, Woodliff & Franks, Sam E. Scott, George F. Woodliff, III, Jackson, for appellant.
Ott & Purdy, William R. Purdy, Jackson, for appellees.
En Banc.
HAWKINS, Justice, for the Court:
This is an appeal by The Mississippi Bank from a decree of the Chancery Court of the First Judicial District of Hinds County dismissing its bill of complaint against Nickles & Wells Construction Company, Inc., and The Western Casualty & Surety Company.
The sole appellate question: Are prohibitions against assignments in construction *1057 contracts effective to prevent an assignment for the purpose of creating a security interest for a debt? The chancellor answered this question "yes," and since we are persuaded otherwise, we reverse.
On December 15, 1978, Hinds Junior College and Nickles & Wells Construction Company, Inc., executed a construction contract for an addition to the college library. This contract between the owner and contractor was on the standard form agreement of the American Institute of Architects, form A101-1977. Attached as a part of this contract was a pamphlet entitled "General Conditions of the Contract for Construction," on form A201-1976 of the institute. Article 7, Miscellaneous Provisions, Section 7.2.1 contains the following prohibition:
... Neither party to the Contract shall assign the Contract or sublet it as a whole without the written consent of the other, nor shall the Contractor assign any monies due or to become due to him hereunder, without the previous written consent of the Owner.
On January 25, 1979, Nickles & Wells and Gallagher Mechanical, Inc., executed a subcontract (presumably with the consent of the owner since this question was never raised) to perform some of the work under the original contract. The subcontract has the following provision:
7. This contract shall not be assigned by the Subcontractor without prior written approval from the Contractor.
On February 8, 1980, Gallagher Mechanical executed an assignment to The Mississippi Bank. This document is headed "Assignment." The pertinent provisions of the body of the document are as follows:
For the purpose of securing the sum of Twelve Thousand Five Hundred Eighty-Nine & 20/100 Dollars due by the undersigned to The Mississippi Bank, Jackson, Mississippi, evidenced by note of even date herewith, said note maturing April 21, 1980, after date, and for the purpose of securing renewals of said note, in whole or in part, and for the purpose of securing all other amounts that may be due and owing by the Undersigned to said Bank within one year from this date, whether said amounts are represented by overdrafts, open accounts or otherwise, the Undersigned does hereby assign, convey, transfer and pledge to said Bank
Assignment of Contract between Nickles and Wells Construction Company and Gallagher Mechanical, Inc., in the amount of $12,589.20, Check to be made payable to the Mississippi Bank.
Said Bank, or legal holder of said notes, is hereby fully authorized to collect, receive and receipt for the amounts above described as and when the same become due and payable and to properly endorse in the name of the Undersigned all warrants and checks given toward the payment of said amounts.
We hereby authorize the issuance of warrants and checks in payment of said amounts to and in the name of said Bank and such checks and warrants shall be delivered to said Bank, and all amounts paid to said Bank under this assignment shall be considered as payments directly to the Undersigned.
Notice of the assignment was given to Nickles & Wells, which noted thereon "Received but not accepted."
The bank made demand upon Nickles & Wells and its surety Western Casualty for a progress payment in the amount of the assignment, which they refused to pay. Gallagher Mechanical defaulted on the subcontract and on its note to the bank. The bank filed suit in chancery court April 21, 1980, and both defendants answered raising numerous defenses.
The first defense raised by Nickles & Wells asserted the contractual prohibitions against an assignment.[1] The chancellor *1058 conducted a preliminary hearing on the first defense that Gallagher by contract was prohibited from making any assignment without the written consent of Nickles & Wells, and having no such consent  it in fact being specifically rejected  the bank was barred from recovery.
The bank either had actual notice or was charged with notice of these contractual provisions prohibiting assignments either of the contract or monies due or to become due thereunder.
The sole question we address on this appeal is whether or not the Uniform Commercial Code as adopted in this state makes this contractual provision ineffective, insofar as it pertains to creating a security interest for the debt Gallagher owed the bank. The chancellor dismissed the bill on this first defense of Nickles & Wells, and we go no further. We do not address any of the remaining defenses, or even the validity or effect of this assignment, except on this one defense raised by Nickles & Wells.

LAW
What is a security interest?
This definition is given in the first chapter of the Mississippi Uniform Commercial Code, Mississippi Code Annotated section 75-1-201(37) (1972), from which we quote the pertinent portions:
(37) "Security interest" means an interest in personal property ... which secures payment or performance of an obligation... . The term also includes any interest of a buyer of accounts or chattel paper which is subject to Chapter 9... .
Chapter 9, covering secured transactions, is the article with which we deal in this decision.[2]
The pertinent portions of Mississippi's chapter 9 of the Uniform Commercial Code dealing with secured transactions are as follows:
§ 75-9-102. Policy and scope of chapter.
* * * * * *

*1059 (2) This chapter applies to security interests created by contract including pledge, assignment.... This chapter does not apply to statutory liens except as provided in section 75-9-310.
§ 75-9-105. Definitions and index of definitions.
(1) In this chapter unless the context otherwise requires:
(a) "Account debtor" means the person who is obligated on an account, chattel paper or general intangible;
* * * * * *
(i) "Instrument" means a negotiable instrument (defined in section 75-3-104), or a security (defined in section 75-8-102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment;
* * * * * *
(1) "Security agreement" means an agreement which creates or provides for a security interest;
(m) "Secured party" means a lender, ...
§ 75-9-106. Definitions: "account"; "general intangibles".
"Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance. "General intangibles" means any personal property (including things in action) other than goods, accounts, chattel paper, documents, and instruments and money. All rights to payment earned or unearned under a charter or other contract involving the use or hire of a vessel and all rights incident to the charter or contract are accounts.
In the above section we underscore the applicable portion to this case.
§ 75-9-318. Defenses against assignee; modification of contract after notification of assignment; term prohibiting assignment or creation of security interest in general intangible for money due ineffective; identification and proof of assignment.
* * * * * *
(4) A term in any contract between the account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest.
Again, the applicable portion of this section is underlined.
Chapter 9 contains one section on exclusions. One subparagraph of this section is as follows:
§ 75-9-104. Transactions excluded from chapter.
This chapter does not apply
* * * * * *
(f) to a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract or a transfer of a single account to an assignee in whole or partial satisfaction of a pre-existing indebtedness; ...
We are compelled to hold, under the above-quoted provisions from the Mississippi Uniform Commercial Code, that any contract which prohibits the assignment of money due or to become due thereunder is ineffective to prevent the creation of a security interest for the purpose of extension of credit under chapter 9. Whatever right Gallagher Mechanical had to payment under its contract with Nickles & Wells was an "account," and this was true whether or not it had been earned by performance. Miss. Code Ann. § 75-9-106, supra. Nickles & Wells was an "account debtor." Miss. Code Ann. § 75-9-105(1)(a), supra.
Therefore, if Gallagher Mechanical made an assignment to the bank of its right *1060 to payment for services rendered under its contract with Nickles & Wells for the purpose of creating a security interest under chapter 9 of the Mississippi Uniform Commercial Code, then any contractual prohibition against such assignment was ineffective.
The circumstances of the bank's dealings with Gallagher Mechanical were never developed. The bank is entitled to prove to the trial judge whether or not the assignment from Gallagher Mechanical is entitled to the protection of Mississippi Code Annotated section 75-9-318(4), supra. Also left for the trial court upon hearing is whether the agreement between the bank and Gallagher Mechanical came under any exclusion of Mississippi Code Annotated section 75-9-104(f), supra.[3]
In so holding, we overrule Frazier v. National Electric Supply Company, Inc., 362 So.2d 609 (Miss. 1978), insofar as it held that section 75-9-104(f) excluded construction contracts from chapter 9 of the code, and for this reason that a construction contract could effectively prohibit an assignment of money due thereunder without the written consent of the obligor. We leave intact our law on assignments absent statutory restrictions imposed by the code.
The purpose of the Uniform Commercial Code is to broaden the subjects of security interests and promote commerce and lending. Virtually any right to property or services is subject to creating a security interest to induce an extension of credit.
The official comment to section 9-318(4) of the code is instructive. We quote only the first paragraph:
* * * * * *
4. Subsection (4) breaks sharply with the older contract doctrines by denying effectiveness to contractual terms prohibiting assignment of accounts and contract rights  that is, sums due and to become due under contracts of sale, construction contracts and the like. Under the rule as stated an assignment would be effective even if made to an assignee who took with full knowledge that the account debtor had sought to prohibit or restrict assignment of the account or of the money to be earned under the contract. (emphasis added).[4]
The remainder of the comment on subsection (4) gives some history of the law pertaining to assignments of sums due under contracts, and the reason for the approach taken in the code. Thus, the official comment makes emphatically clear the intent of the drafters of the code to make any prohibition in a construction contract of an assignment of payment due thereunder ineffective.
The official comment to section 9-104(f) is also instructive as to the exclusions intended under this subsection:
* * * * * *
6... . Paragraph (f) excludes from the Article certain transfers of such intangibles which, by their nature, have nothing to do with commercial financing transactions.

These official comments to the code were not addressed in Frazier v. National Electric Supply Company, Inc., supra, and an overly broad interpretation was given to the exclusion under subsection (f).
Several jurisdictions have considered the validity of a contractual prohibition against an assignment of payments due under a construction contract for the purpose of creating a security interest under chapter 9. All have held such prohibitions ineffective. See General Electric Supply Co. v. Epco Constructors, Inc., 332 F. Supp. 112 (S.D. Tex. 1971); Florida First National Bank at Key West v. Fryd Construction Corp., 245 So.2d 883 (Fla. 1970); American Bank of Commerce v. City of McAlester, 555 P.2d 581 (Okl. 1976); Prime Construction Co., Inc. *1061 v. Seattle-First National Bank, 16 Wash. App. 674, 558 P.2d 274 (1977).[5]
We therefore reverse and remand to afford the bank an opportunity to demonstrate whether or not a security interest was created, under chapter 9 of the Mississippi Uniform Commercial Code, in its dealing with Gallagher Mechanical and whether it is entitled to the protection of Mississippi Code Annotated section 75-9-318(4), supra. We reiterate that we go no further in this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, BOWLING, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] The bank argues on appeal that the prohibition against assignment, including that of monies due, contained in the original contract between the owner and Nickles & Wells was not presented to the chancellor in support of its first defense, but we address the entire prohibitions contained in both contracts. The subcontract embraced all provisions of the original contract.
[2] When first enacted, the last sentence quoted from subparagraph (37) included the term "contract rights," and read as follows: "The term also includes any interest of a buyer of accounts, chattel paper, or contract rights which is subject to Article 9." Miss. Code Ann. § 41A: 1-201 (Special Supp. to Miss. Code Ann. (1942)).

1977 Miss. Laws ch. 452 deleted the term "contract rights" and "contract right" from the above definition and chapter 9 of the Mississippi Uniform Commercial Code, following recommendations made in the Final Report of the Review Committee for Article 9 of the Uniform Commercial Code, dated April 25, 1971. The review committee explained its reason for the deletion of the term "contract right" as follows:
"The term `contract right' has been eliminated as unnecessary. As indicated by a sentence now being eliminated from Section 9-306(1), `contract right' was thought of as an `account' before the right to payment became unconditional by performance by the creditor. But the distinction between `account' and `contract right' was not used in the Article except in subsection (2) to Section 9-318 on the right of original parties to modify an assigned contract, and that subsection has been redrafted to preserve the distinction without needing the term `contract right'. The term has been troublesome in creating a `proceeds' problem where a contract right becomes an `account' by performance; in the Code's former denial that there could be any right in an account until it came into existence (former Section 9-204 (2)(d)), notwithstanding a security interest in the pre-existing contract right; and in the danger of inadequate description in financing statements by claiming `accounts' or `general intangibles' when before performance they should have been described as `contract rights'; and in other respects...."
The term "contract right," prior to the 1977 amendment, was defined in Miss. Code Ann. § 41A: 9-106 (Special Supp. to Miss. Code Ann. (1942)): "`Contract right' means any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper." The term "contract right" is now embraced under the definition of "account," which was also broadened by amendment in the 1977 act to include the former definition of "contract right." See Pine Builders, Inc. v. United States, 413 F. Supp. 77 (E.D.Va. 1976); Dynair Electronics, Inc. v. Video Cable, Inc., 55 Cal. App.3d 11, 127 Cal. Rptr. 268 (1976).
Therefore, in reviewing any court decision involving the term "contract right," the meaning given should be ascertained by reference to the UCC provision in effect at the time of the decision. In addition, anyone involved in a transaction which may be covered under the UCC should be acutely aware that words defined by the code may not come within a general definition of the word.
[3] It would appear that the only possible exclusion under § 75-9-104(f) would be if the assignment was in whole or partial satisfaction of a pre-existing indebtedness.
[4] Note the use of the term "contract rights" which was in the code and code comments prior to deletion of the term, and thereafter subsumed under "account." See supra note 2.
[5] We again caution in review of these decisions that their use of the term "contract right" would now be included under the definition of "account." See supra note 2.