# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-01869-SCT

*ST. PAUL MERCURY INSURANCE COMPANY*

*v.*

*MERCHANTS & MARINE BANK*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/6/2003 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MARK D. HERBERT |
| | LISA ANDERSON REPPETO |
| ATTORNEY FOR APPELLEE: | DAVID W. MOCKBEE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 08/26/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from an interpleader action in which the Gulfport School District deposited $227,738.16 with the Harrison County Circuit Court. Defendants St. Paul Mercury Insurance Company and Merchants and Marine Bank both claimed priority to differing amounts. The circuit court granted summary judgment to Merchants in regard to the amount of the interpled funds requested and granted summary judgment to St. Paul in regard to the amount of the interpled funds remaining after payment to Merchants. We reverse the circuit court's decision and remand with instructions to enter a judgment in favor of St. Paul for the full amount.

**FACTS**

¶2.	In November of 2000, Schwegman Constructors and Engineers, Inc. entered into a construction contract with the School District for a construction project. Under the contract, the School District was to pay Schwegman Constructors a total of $598,000.00 in exchange for construction services. St. Paul issued a performance bond for Schwegman Constructors in favor of the School District for $598,000.00.

¶3.	In June of 2001, Schwegman Constructors obtained a loan of $105,000.00 in working capital from Merchants. Merchants secured the loan by an assignment of Schwegman Constructors' application to the School District for payment number eight in the amount of $132,192.17. The loan agreement, entitled "Multipurpose Note and Security Agreement," provides, "I give you a security interest in the following . . . ." The contract also made reference to the agreement as "a loan pursuant to and . . . entitled to the benefits of the security agreement," as well as making numerous references to the assignment as "collateral." Furthermore, Merchants contends that "Merchants' loans to [Schwegman Constructors] . . . were secured by the [Schwegman Constructors] Progress Payment No. 8 and other assignments from other projects." Finally, both Herman Smith, Merchants' Vice President, and Joe P. Schwegman, President of Schwegman Constructors, stated in sworn affidavits that the loan was "secured by an assignment of contract proceeds."


¶4.	Stamped on the agreement, and signed by Schwegman Constructors' representative was a statement which read:

> We hereby sell and assign, with full recourse the above invoice and the proceeds due from the transaction evidenced thereby to Merchant and Marine Bank, Pascagoula, Mississippi, and you are hereby directed to pay over and remit such proceeds directly to said bank for our account as aforesaid.

In the language contained in the Notice of Assignment of Accounts Receivable, it also stated, "You are hereby notified that all amounts that you owe to Assignor as a result of any assigned accounts receivable

2

shall be paid directly to the Assignee." Merchants did not file a Uniform Commercial Code financing statement with regard to this loan.

¶5. As a result of Schwegman Constructors' inability to fulfill its obligations on $292,000-worth of construction contracts bonded by St. Paul, Schwegman Constructors and St. Paul entered into a settlement agreement in October of 2001. In exchange for St. Paul's agreement to waive its right to seek personal indemnification from Schwegman Constructors President Joseph P. Schwegman pursuant to the terms of the bond, Schwegman Constructors granted St. Paul a security interest in all assets of the business, including all rights to payment under any contract. Soon afterward, both Schwegman Constructors and St. Paul executed a valid UCC financing statement and recorded it with both the Secretary of State and the Chancery Clerk of Jackson County.

¶6. Subsequently, both Merchants and St. Paul applied to the School District for payments due to Schwegman Constructors, but the School District was uncertain which of the two had priority over the funds. Therefore, to avoid potential liability for giving funds to one party which rightfully belonged to the other, the School District deposited the funds with the Harrison County Circuit Court and commenced this interpleader action.

¶7. Merchants filed a motion for summary judgment with respect to the amount of interpled funds covered by payment number eight, arguing that as an assignee bank, it had priority over the surety as to progress payments. St. Paul filed a cross-motion for summary judgment with respect to the entire amount interpled by the School District, arguing that under the UCC, Merchants' failure to file a financing statement resulted in an unperfected security interest for Merchants, giving St. Paul priority over the payments.

¶8. The circuit court granted Merchants' motion for summary judgment, reasoning that because St. Paul was aware of Merchants' loan to Schwegman Constructors prior to entering into the settlement agreement,

3

"the purpose of filing a an [sic] Article 9 financing statement, to provide notice to potential creditors of preexisting liens, was fulfilled." The circuit court further reasoned that because Schwegman Constructors first assigned to Merchants "present and future right, title, and interest" to the collateral, St. Paul's filing of a financing statement could not "serve to create a greater right in [St. Paul] than [Schwegman Constructors] had to give."

## DISCUSSION

¶9. We review de novo both questions of law and summary judgments. *Doe v. Stegall*, 757 So. 2d 201, 204 (Miss. 2000).

¶10. The central and controlling issue in this case is whether Schwegman Constructors' transaction with Merchants is one which is covered by the UCC. If so, Merchants was required to comply with the UCC's attachment and perfection requirements for security interests in order to take priority over St. Paul for the interest in conflict.

*Whether Merchants' Security Interest is Covered by the UCC*

¶11. Mississippi's version of the UCC applies to "security interests by contract including . . . assignment." Miss. Code Ann. § 75-9-102(2) (1972).[1] Furthermore, in *Mississippi Bank v. Nickles & Wells Construction Co.*, 421 So. 2d 1056, 1060 (Miss. 1982), we held that Mississippi's version of UCC Article 9 applies to assignments of construction contracts.[2]

---

[1]Mississippi adopted the revised version of Article 9 of the UCC, effective January 1, 2002. However, in light of the fact that this action was filed in November of 2001, the version of the UCC in place at the time of the action is applicable. Miss. Code. Ann. § 75-9-709 (2002).

[2]*Nickles* overruled *Frazier v. National Electric Supply Company*, 362 So. 2d 609 (Miss. 1978), "insofar as it held that § 75-9-104(f) excluded construction contracts from chapter 9 of the code." *Id. C.f. Great S. Nat'l Bank v. McCullough Envtl. Servs., Inc.*, 595 So. 2d 1282 (Miss. 1992) (relying solely upon UCC to establish adequate notice of assignment in case of subcontractor which

4

¶12. Under the comment to the UCC, the test for when a transaction is covered by Article 9 is whether "the transaction intended to have effect as security." Miss. Code Ann. § 75-9-102 cmt.1 (1972). Furthermore, "[v]irtually any right to property or services is subject to creating a security interest to induce an extension of credit." *Nickles*, 421 So. 2d at 1060.

¶13. Merchants contractually took a security interest by way of assignment in Schwegman Constructors' right to payment for construction work. This transaction is covered by the UCC, and Merchants' argument to the contrary has no merit.

*Whether Merchants or St. Paul First Complied with the UCC Requirements*

¶14. A security interest attaches when: (1) there is an agreement; (2) value is given; and (3) the debtor has rights in the collateral. Miss. Code Ann. §§ 75-9-203(1)(a)(b)(c) (1972).

¶15. The security interests of both Merchants and St. Paul properly attached in compliance with the UCC. In Merchants' case: (1) it executed an agreement with Schwegman Constructors to take an assignment of Schwegman Constructors' right to payment number eight; (2) it gave value of $105,000.00; and (3) pursuant to Schwegman Constructors' work on its project for the School District, Schwegman Constructors had rights in payment number eight. In St. Paul's case, (1) it executed an agreement with Schwegman Constructors to take an assignment of Schwegman Constructors' right to payment number eight; (2) it gave value by waiving its right to seek personal indemnification from Joe Schwegman after Schwegman Constructors' default on its contractual obligations which St. Paul had bonded; and (3) pursuant to Schwegman Constructors' work on its project for the School District, Schwegman Constructors had rights in payment number eight.

---

assigned its right to payment to bank under its contract with general contractor in order to secure $12,000.00 loan).

¶16.    If conflicting security interests have attached, priority over the contested collateral goes to the party who filed or perfected first. Miss. Code Ann. § 75-9-312(5)(a) (1972). The Legislature required the filing of a financing statement as a means of implementing a simple procedure which would provide notice. Miss. Code Ann. § 75-9-402 cmt.2 (1972).

¶17.    On direct appeal, Merchants styles the transaction between it and Schwegman Constructors as an "absolute assignment" and not a security interest, arguing that the UCC therefore does not apply. The circuit court agreed with this argument, finding that St. Paul's filing statement was wholly ineffective at giving it priority since Schwegman Constructors had already assigned a portion of payment number eight to Merchants. However, the language of Merchants' agreement with Schwegman Constructors is clear: though the agreement did indeed involve an assignment, the assignment of payment number eight merely operated as a means of securing the loan of $105,035.00. This is attested to in the language and terms of the agreement, as well as Merchants' own brief and affidavits.

¶18.    The comment to the UCC asks "whether the transaction *was intended to have effect* as security." (emphasis added). The intended effect of Merchants' transaction was to secure a loan by way of assignment. The "assignment" language in the contract and Merchants' current characterization of the transaction do not change the fact that the inherent nature of the loan was that of a secured transaction.

¶19.    Both Merchants and St. Paul entered into transactions covered by the UCC. Both properly attached their interest in the collateral. However, because St. Paul acted in compliance with Mississippi law by attaching and immediately perfecting its interest by filing, it earned the right to priority over Merchants' interest in the collateral.

*Whether St. Paul's Alleged Knowledge Affects the Outcome under the UCC*

6

¶20. The circuit court held that "the purpose of filing a an [sic] Article 9 financing statement [is] to provide notice to potential creditors of preexisting liens" and that this purpose was fulfilled by St. Paul's alleged knowledge of the transaction between Merchants and Schwegman.[3]

¶21. Knowledge of either party in an action over a conflicting security interest is relevant to the perfection inquiry when a creditor has filed a financing statement but has not properly perfected its interest. Miss. Code Ann. § 75-9-401(2) (1972). In this case, the creditor may still maintain priority if it can demonstrate that the subsequently filing creditor had knowledge of the contents of a filing statement made in good faith. *Id.*

¶22. Knowledge is statutorily irrelevant to our inquiry unless Merchants at least filed a financing statement, which, as noted above, it did not. The UCC serves to provide uniformity and certainty in business transactions. *See generally* Miss. Code Ann. § 75-1-102 (1972) (stating general purposes of the UCC). Adding an extra-statutory lack of knowledge requirement to the Legislature's filing and perfection mandate would create a climate of incertitude for companies like Merchants and St. Paul, for which the Legislature provided one simple procedure so that such companies would know when they have effectively "sealed the deal" in a secured transaction.

*Whether the UCC Exempts Merchants' Transaction from the Filing Requirements*

¶23. Even if a party is covered by the filing requirement provisions of the UCC, it may be exempt from filing "where an assignment (done or in conjunction with others) to the same assignee does not transfer a

---

[3]The circuit court cited three cases to support this proposition. *See In re Turnage*, 493 F.2d 505 (5th Cir. 1974); *In re King-Porter Co.*, 446 F.2d 722 (5th Cir. 1971); *West Implement Co., v. First S. Prod. Credit Ass'n*, 815 So. 2d 1164 (Miss. 2002). Although the cases do indeed highlight the purpose of the filing requirement, none of the cases discussed the effect of one party's knowledge in such a transaction. Furthermore, these cases involved fact scenarios in which the court reviewed the adequacy of filing statements. The case at hand concerns a party who never filed at all. Thus, the circuit court erred in relying on these cases.

significant part of the outstanding accounts of the assignor." Miss. Code Ann. § 75-9-302(1)(e). The comment to the UCC explains the exception:

> The purpose of the subsection (1)(e) exemption is to save from ex post facto invalidation casual or isolated assignments: some accounts receivable statutes were so broadly drafted that all assignments, whatever their character or purpose, fell within their filing provisions. Under such statutes many assignments which no one would think of filing might have been subject to invalidation. The paragraph (1)(e) exemption goes to that type of assignment. *Any person who regularly takes assignments of any debtor's accounts should file.*

*Id.* at cmt.5 (emphasis added).

¶24.    In this issue of first impression for our Court, Merchants argues that even if we find that the UCC applies, it is exempt under Section 75-9-302(1)(e). We disagree. Schwegman Constructors' outstanding accounts receivable for the month ending June 30, 2001, totaled $1,274,117.95. Merchant's loans to Schwegman Constructors totaled $335,019.00, representing more than one quarter of Schwegman Constructors' total outstanding accounts receivable. This is by no means a "casual or isolated assignment" transferring an insignificant part of Schwegman Constructors' outstanding accounts receivable. Therefore, Merchants is not exempt from the filing requirement. Indeed, the comment counsels that a person in Merchants' position "who regularly takes assignments of any debtor's accounts should file."

## CONCLUSION

¶25.    We reverse the judgment of the circuit court and remand this case to the circuit court with instructions to enter an appropriate judgment granting St. Paul's motion for summary judgment, denying Merchants' motion for summary judgment, and directing the Circuit Clerk of Harrison County to disburse to St. Paul the full amount of the interpled funds, $227,738.16, plus accrued interest.

¶26.    **REVERSED AND REMANDED.**

**SMITH, C.J., COBB, P.J., AND DICKINSON, J., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, CARLSON, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**