**Donald G. PAUL, Plaintiff,**

**v.**

**CHROMALYTICS CORPORATION, a Delaware Corporation, and Chemalytics Corporation, a Pennsylvania Corporation, Defendants.**

Superior Court of Delaware,
New Castle.

July 22, 1975.

---

---

Richard E. Poole, and Daniel F. Wolcott, Jr., Potter, Anderson & Corroon, Wilmington, for plaintiff.

N. Maxson Terry, Jr., Terry, Terry & Jackson, Dover, for defendant Chromalytics Corp.

Peter J. Walsh, and Alan S. Yoffie, Murdoch & Walsh, Wilmington, for Chemalytics Corp.

## OPINION

CHRISTIE, Judge.

This action arises from an agreement entered into on February 1, 1973, for the purchase and sale of substantially all of the assets of Chemalytics Corporation to Spex Industries, Inc., for the price of $200,000. In another agreement executed on the same date, Spex agreed to employ Donald Paul, the president of Chemalytics, for a three-year period. Shortly before the closing, Spex transferred all of its rights in the purchase agreement to its wholly-owned subsidiary, Chromalytics Corporation. The $200,000 purchase price was payable as follows: $151,500 in cash, and two promissory notes, one for $7,500; the other for $41,000.

An escrow agreement was executed on the same day setting aside $17,500 of the cash and the $7,500 promissory note as an escrow fund to cover damages arising from any misrepresentations, breaches of warranty, or non-compliance with the terms of the purchase agreement on the part of Chemalytics. The escrow agreement called for arbitration of disputed claims, while the purchase agreement contained no such provision.

Pursuant to the escrow agreement, Chromalytics, on January 7, 1974, gave notice to the escrow agents not to dispose of the escrow fund and claimed it as damages for misrepresentations and breaches of warranty on the part of Chemalytics.

On January 8, 1974, Chemalytics purported to assign its rights, title and interest in the promissory notes to Donald G. Paul, the plaintiff, despite a provision in the purchase agreement forbidding such assignment without the consent of Spex or its assignee, Chromalytics. The required consent was apparently never obtained. In February of 1974, Chemalytics demanded arbitration as provided in the escrow agreement, whereupon arbitration was commenced in New York.

On September 6, 1974, the arbitrator made the following jurisdictional determinations:

1) Chemalytics Corporation is a proper Party claimant.

2) The Arbitrator finds that the AGREEMENT FOR PURCHASE AND SALE OF ASSETS dated February 1, 1973, the ESCROW AGREEMENT dated February 1, 1973, and the ESCROW AGREEMENT dated May 15, 1973, together constitute a single transaction and the Arbitrator will assume jurisdiction of all disputes arising out of said transaction.

3) The Arbitrator's jurisdiction in adjudicating this Arbitration will not be limited in any manner to the amount deposited in escrow with the escrow agent.

4) The Arbitrator declines jurisdiction over any dispute arising out of the employment agreement between Donald G. Paul and Chromalytics Corporation.

Three days prior to the arbitrator's jurisdictional pronouncements, plaintiff, Donald G. Paul, brought this suit in Superior Court against defendants Chromalytics Corporation and Chemalytics Corporation seeking the following relief:

I. Payment to him of the two promissory notes earlier assigned to him by Chemalytics in the amount of $48,500 by defendant Chromalytics;

II. A declaratory judgment that defendant Chemalytics is alternatively also liable to plaintiff for the $48,500 sought in the first cause of action;

III. Damages for breach by defendant Chromalytics of the employment contract; and

IV. A declaratory judgment limiting the jurisdiction of the arbitration proceeding then pending in New York.

In response, defendant Chromalytics has moved to dismiss with respect to the first, second and fourth causes of action on the grounds that the Court lacks jurisdiction over the subject matter thereof, that plaintiff lacks standing to maintain such causes of action, and/or that they fail to state claims upon which relief may be granted. As to the third cause of action, defendant Chromalytics has moved for summary judgment.

On March 21, 1975, defendant Chemalytics filed an amended answer and counterclaim and added a cross-claim against Chromalytics asserting a right against Chromalytics in the two promissory notes which it has assigned to Mr. Paul. On April 2, 1975, defendant Chromalytics moved the Court for an order dismissing the amended pleadings of Chemalytics on the grounds that the attempted amendments were violative of Civil Rule 15 in that they were filed without the consent of the Court or the adverse parties.

■ It is the policy in this jurisdiction to be liberal in permitting amendments to pleadings at all stages of the proceedings unless the opposing party shows that it would be seriously prejudiced thereby. *Gott v. Newark Motors, Inc.,* Del.Super., 267 A.2d 596 (1970); *E. K. Geyser Co. v. Blue Rock Shopping Center, Inc.,* Del. Super., 229 A.2d 499 (1967). Chromalytics cites no specific prejudice resulting from the attempted amendment, alluding only to the interest in not disrupting the orderly progress of the case. Under the circumstances here present that interest is not enough to constitute serious prejudice. The interests of both parties should be considered when an application to amend is made. *Friedman v. Transamerica Corporation,* 5 F.R.D. 115 (D.C.Del.1946). Even if some prejudice to the adverse party is found, that prejudice must be balanced against the hardship to the moving party if he is denied leave to amend. 6 Wright & Miller, *Federal Practice and Procedure,* § 1487. The prejudice alleged by Chromalytics is far outweighed by the damage to Chemalytics if it is barred from asserting its cross-claim against Chromalytics. Therefore, defendant Chromalytics' motion to strike Chemalytics' amended pleadings of March 21, 1975, is denied, and the amended pleadings are permitted.

■ Defendant Chromalytics' initial contention is that plaintiff Paul lacks standing to sue to collect on the two promissory notes or to seek declaratory relief limiting arbitration of Chromalytics' claim to offset against the notes. This position is based upon paragraph 14 of the purchase agreement which provides that:

". . . any assignment of this Agreement or the rights hereunder by Chemalytics without the written consent of Spex shall be void . . ."

The validity of such clauses has invariably been upheld. See Annot., 37 A.L.R. 2d 1251 (1954). The contractual prohibition of assignment of contract rights ordinarily serves to protect the obligor alone and does not affect the legal or equitable rights of

the assignor and assignee as between themselves.[1] *Paxson v. Commissioner of Internal Revenue*, 144 F.2d 772, 775 (3rd Cir. 1944); *Rosenthal v. Landau*, 90 Cal. App.2d 310, 202 P.2d 810, 813 (1949); *O'Neill v. O'Malley*, 75 Cal.App.2d 821, 171 P.2d 907, 909 (1946); *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.*, 147 U.S.App.D.C. 14, 452 F.2d 1346 (1971); 3 S. Williston, *Contracts* § 442, at 140, 141. This position is in accord with *Restatement (Second) of Contracts* § 154 (Tent.Draft No. 7, 1973), which states in pertinent part:

> "A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested, is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor . . ."

The obligor, of course, may gain, from a valid and unwaived non-assignability provision, the prerogative to resist or even nullify the assignment. *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc., supra* at 1351; *Detroit Greyhound Employees Federal Credit Union v. Aetna Life Insurance Co.*, 7 Mich.App. 430, 151 N.W.2d 852, 856 (1967). However, if the assignor should collect the assigned claim, he would be bound to pay what he had collected to the assignee. 3 S. Williston, *Contracts* § 442 at 141.

Clearly, neither Spex nor Chromalytics has given written consent, as required by the purchase agreement, to the assignment of the contract rights to plaintiff Paul. To no avail is Paul's contention that Chromalytics acquiesced in and relied upon the assignment, thereby waiving any objections it might have had to the assignment. Paul cites *Concrete Form Co. v. W. T. Grange Construction Co.*, 320 Pa. 205, 181 A. 589 (Pa.1935) where the Court noted at 590:

> "Any waiver of that [non-assignability] provision or consent to its violation would have to be clear, distinct, and unequivocal."

No actions of Chromalytics in this regard were of such clear purpose. Furthermore, the contractual ban of assignments in this type of contract is not precluded by statute.[2] The assignment is thus void as to Chromalytics, and I therefore hold that Paul lacks standing to pursue his first and fourth causes of action.

However, as noted above, although Chromalytics, as obligor, may use the non-assignability clause as a protective shield to resist the claims of Paul, as assignee, for the promissory notes, the clause does not prevent the transaction between Chemalytics, as assignor, and Paul, as assignee, insofar as the relationship between themselves is concerned. Therefore, Paul does have standing to bring his second cause of action in Superior Court. Even if this were not the case, since the second cause of action is directed to Chemalytics alone, it would be inappropriate to consider a motion to dismiss this cause of action made by Chromalytics. Having made these determinations, it is unnecessary to discuss the other motions raised by Chromalytics with regard to causes of action one, two and four.

1. See the limiting footnote which appears in *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.*, 147 U.S.App.D.C. 14, 452 F.2d 1346, 1351 (1971):
   "We speak, of course, only of an assignment of rights as distinguished from attempted delegation of an obligation. We also distinguish the situation sometimes encountered, notably in statutes and trusts, where an antiassignment provision is plainly intended to protect the assignor."

2. Although 6 Del.C. § 9–318(4) renders ineffective a term in any contract between an account debtor and an assignor which prohibits assignment of an account or contract right to which they are parties, this transaction concerned the sale of contract rights "as part of a sale of the business out of which they arose . . .," which is outside the scope of Section 9. See 6 Del.C. § 9–104(f).

With regard to the third cause of action seeking damages for the alleged breach of the employment contract between Paul and Chromalytics, there clearly exists a genuine issue of material fact. While what happened may be undisputed, the intentions of the parties and the inferences to be drawn therefrom are in dispute. Therefore, summary judgment must be denied. *Plant v. Catalytic Construction Company,* Del.Super., 287 A.2d 682 (1972).

Defendant Chromalytics' motion for summary judgment as to Count III is denied. Chromalytics' motion to dismiss Counts I and IV is granted and Chromalytics' motion to dismiss Count II is denied. It is so ordered.