# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SOUTHEASTERN CHESTER COUNTY REFUSE AUTHORITY | : | |
| | : | |
| | : | |
| Plaintiff, | : | K14C-06-016 JJC |
| | : | In and For Kent County |
| v. | : | |
| | : | |
| BFI WASTE SERVICES OF PENNSYLVANIA, LLC | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

Submitted: April 11, 2017
Decided:  June 27, 2017

## MEMORANDUM OPINION

*Plaintiff's Motion for Summary Judgment - GRANTED in Part and DENIED in Part*
*Defendant's Cross Motion for Summary Judgment - GRANTED in Part and DENIED in Part*

Brian T.N. Jordan, Esquire, Jordan Law, LLC, Wilmington, Delaware, Attorney for Plaintiff.

Joseph C. Schoell, Esquire, Drinker, Biddle & Reath, LLP, Wilmington, Delaware, Attorney for the Defendant.

Clark, J.

# I.     Introduction

Before the Court are cross-motions for summary judgment filed by Southeastern Chester County Refuse Authority (hereinafter "SECCRA") and BFI Waste Services of Pennsylvania, LLC (hereinafter "BFI"). BFI entered into an Asset Purchase Agreement (hereinafter "Purchase Agreement") with Signature Waste LLC (hereinafter "Signature") and Signature's sole member, Brian Lockhart (hereinafter "Mr. Lockhart"). Separately, Signature allegedly owes money to SECCRA for landfill fees (hereinafter "tipping fees"). These tipping fees were an excluded liability in the Purchase Agreement.

To ensure BFI did not incur losses for the SECCRA Claim, BFI and Signature, along with Mr. Lockhart, executed a modification agreement, which created "Retained Funds." BFI accordingly retained $50,000 as security for any losses from SECCRA's claims for the tipping fees. Upon resolution of the SECCRA claims, the funds were to be reimbursed to Signature and Mr. Lockhart. In this case, BFI and SECCRA dispute entitlement to the $50,000.

SECCRA argues that it deserves this $50,000 because Signature and Mr. Lockhart's assigned their interest in the Retained Funds to SECCRA. Alternatively, SECCRA also argues that it is entitled to the money as a third-party beneficiary to the modification agreement. In contrast, BFI argues that SECCRA has no right to the funds because the assignment was not valid and SECCRA was not a third-party beneficiary to the modification agreement. In the alternative, BFI argues that if SECCRA is entitled to the Retained Funds, the modification agreement permits BFI to offset any losses incurred as a result of the SECCRA claim before it must relinquish the remaining funds. For the reasons set forth below, SECCRA is entitled to the Retained Funds, but BFI is entitled to offset its losses (as defined in the Purchase Agreement) up to the full $50,000.

2

## II.     Facts and Procedural Background

The facts cited herein are as stipulated by the parties and as found in the documents included within the record.  In 2011, Signature utilized SECCRA's landfill for trash disposal services.  In exchange for allowing Signature to use its landfill, SECCRA charged Signature tipping fees.  Signature allegedly failed to pay for some of these services incurred prior to its sale to BFI.

Around June 15, 2011, BFI entered into a Purchase Agreement with Signature and Mr. Lockhart, as Signature's sole member.  The parties closed on the Purchase Agreement on July 29, 2011.  In the beginning of August 2011, after the closing, SECCRA notified BFI that it claimed $315,458.14 in tipping fees and finance charges that Signature accumulated for disposal services, prior to the sale, in June and July 2011.  However, under the Purchase Agreement, BFI did not assume Signature's obligation to SECCRA.  Within days of the sale, SECCRA sued Signature and Mr. Lockhart for these unpaid tipping fees in the Court of Common Pleas of Chester County, Pennsylvania.

To ensure that BFI did not incur losses as a result of this SECCRA dispute, BFI, Signature, and Mr. Lockhart entered into a modification of the Purchase Agreement on November 29, 2011.  This modification set aside the Retained Funds.  Namely, the parties agreed that BFI was entitled to retain $50,000 from the monies due "as security for any Losses that Buyer may incur in connection with the SECCRA Claim . . . ."[1]  The language in the provision creating the Retained Funds provides that BFI is entitled to retain this money until Signature satisfies certain conditions.[2]  The conditions include that Signature must provide

> a copy of a written settlement agreement executed by Buyer and
> SECCRA that (a) fixes the amount of disposal fees due from Seller to

---

[1] SECCRA's Opening Brief Ex. D (November 29, 2011 Modification Agreement).

[2] *Id.*

3

SECCRA in connection with the SECCRA Claim, and (b) includes an express acknowledgement that Buyer will not have any liability to SECCRA in connection with the SECCRA Claim.[3]

Once these conditions occur, the modification agreement requires BFI to transfer the money remaining in this fund to Signature, after it offsets its losses (as defined in the Purchase Agreement).[4]

The Court of Common Pleas for Chester County subsequently entered judgment against Mr. Lockhart for $337,963.70. It also entered judgment in favor of Signature regarding all claims. After its judgment against Mr. Lockhart, SECCRA began garnishment proceedings in its Chester County action against BFI and pursued discovery. As a direct result of those proceedings, BFI incurred $6,637.50 in legal expenses.

Then, on March 1, 2014, both Signature and Mr. Lockhart assigned their interests in the Retained Funds to SECCRA. This assignment included all of their "right, title, and interest in and to the balance of the "Holdback Funds" and to any and all claims and causes of action related thereto that they may have against BFI arising under and out of" both the Purchase Agreement and modification agreement. In exchange for this assignment, SECCRA released Signature and Mr. Lockhart "from all claims and demands, rights and causes of action of any kind that SECCRA now has or hereafter may have on account of or in any way growing out of its claim for unpaid tipping fees against the released parties."[5] The release stated that it included a full and complete settlement of liability and a full and complete satisfaction of the judgment SECCRA obtained against Mr. Lockhart.[6]

---

[3] *Id.*

[4] *Id.*

[5] SECCRA's Response to BFI's Motion to Dismiss Ex. B (Acceptance of Assignment and Release).

[6] *Id.*

4

However, SECCRA conditioned the release on obtaining the *full* $50,000 of the Retained Funds from BFI.[7]

After receiving this assignment, SECCRA sent BFI a copy of the assignment and a proposed settlement agreement between BFI and SECCRA. The proposed settlement agreement sought to relieve BFI from any liability for Signature's unpaid tipping fees in exchange for the *full* $50,000 in Retained Funds. SECCRA believed that this agreement would satisfy the conditions found in the Retained Funds provision, and therefore, the agreement would require BFI to relinquish the money in that fund. However, BFI rejected the settlement agreement because it did not permit BFI to offset its losses. Instead, BFI sought to reduce the Retained Funds by $6,637.50, the amount of legal expenses it incurred as a result of SECCRA's garnishment proceeding and discovery. In response, SECCRA filed this lawsuit seeking to obtain the *full* $50,000 in Retained Funds.

### III. Standard of Review

Before the Court are cross-motions for summary judgment. In reviewing a motion for summary judgment, "viewing the facts in the light most favorable to the nonmoving party," the moving party must demonstrate "that there are no material issues of fact still in dispute and that the moving party is entitled to judgment as a matter of law."[8] The mere fact that both parties filed motions for summary judgment "does not act *per se* as a concession that there is an absence of factual issues."[9] However, "where the parties have not presented argument to the court that there is an issue of material fact, the court shall deem the motion to be the

---

[7] *Id.*

[8] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).

[9] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

5

equivalent of a stipulation for decision on the merits based on the record submitted with the motion."[10]

## IV. Discussion

For the following reasons, the Court finds that the Signature and Lockhart assignment to SECCRA was valid because consideration supported it, the clause seeking to restrict assignment did not render the assignment void, and it was not champertous.[11] Therefore, SECCRA is entitled to the Retained Funds. However, while SECCRA is entitled to this money, the Court also finds that BFI is entitled to offset its losses (as defined in the Purchase Agreement) with the money in the Retained Funds in an amount up to, but not to exceed, $50,000.

### A. The assignment in this case is valid.

SECCRA maintains that it provided a release from liability to both Signature and Mr. Lockhart with regard to the unpaid tipping fees, and that this constituted adequate consideration. However, BFI argues that the assignment fails for lack of consideration. While BFI acknowledges that an agreement to forebear on a claim or suit can constitute consideration for an assignment, it argues that any alleged consideration was illusory, since Signature, the relevant party in interest, prevailed in the Pennsylvania Court of Common Pleas. Namely, it argues that forbearance as to Mr. Lockhart is irrelevant because the modification agreement concerned a SECCRA Claim for unpaid disposal fees against the Seller, and the Purchase Agreement defines the Seller as Signature and does not include Mr. Lockhart.

---

[10] Super. Ct. R. 56(h).

[11] SECCRA also argues that it is entitled to the Retained Funds as a third-party beneficiary to the modification agreement. However, because the Court finds the assignment valid, the Court need not address this argument.

6

Extending this proposition, BFI argues that the judgment against Mr. Lockhart is not a SECCRA Claim and therefore it does not trigger a right to the Retained Funds that he could subsequently assign. Therefore, BFI argues that, at the time of the assignment, SECCRA did not have any claims against Signature to release it from. BFI argues that such a purported release is not valid consideration.

In response, SECCRA argues that throughout the course of dealings between BFI and Signature, BFI continually acted as though it was dealing with both Signature and Mr. Lockhart. SECCRA notes that Mr. Lockhart, as Signature's sole member, was a party to every document.[12] Therefore, SECCRA argues that the consideration as to Mr. Lockhart was relevant and as to Signature it was not illusory.

BFI further argues that even if the Court were to find valid consideration, the Court could not enforce the assignment because the Purchase Agreement contained an anti-assignment clause that prohibited assignments without BFI and Signature's consent. In response, SECCRA argues that the assignment clause cannot restrict an assignment of rights after a loss has occurred, and therefore, the anti-assignment provision at issue cannot prohibit this assignment.

In order for a contract to be legally enforceable, adequate consideration must support it.[13] In Delaware, for consideration to be valid it must benefit a promisor or constitute "a detriment to the promisee pursuant to the promisor's request."[14]

---

[12] Mr. Lockhart signed both the Purchase Agreement and the modification agreement along with Signature and BFI.

[13] Both parties argued that this assignment required consideration. However, although not raised by SECCRA, many courts recognize gratuitous assignments as valid despite the lack of consideration. *See e.g.*, *Wallach v. Eaton Corp.*, 837 F.3d 356, 369 (3d Cir. 2016) (holding that an express assignment that is in writing is valid even if it is not supported by consideration); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 198 F. Supp. 3d 366, 377–78 (D. Del. 2016) (holding that under Delaware law, a gratuitous assignment is not required to be supported by adequate consideration). Because the parties did not address this issue, the Court's analysis is confined to their arguments assuming that consideration is necessary.

The Court finds that there was consideration recited to support the assignment. While BFI argues that there are no documents evidencing SECCRA's release from liability in exchange for this assignment, SECCRA included one as an exhibit to its response to BFI's motion to dismiss. This document entitled Acceptance of Assignment and Release specifically states that "[t]his release is and expresses a full and complete settlement of liability claimed by SECCRA against both Signature . . . and [Mr.] Lockhart and a full and complete satisfaction of the judgment SECCRA holds against [Mr.] Lockhart . . . ."[15] It recites consideration by providing that SECCRA released Signature and Mr. Lockhart from liability in exchange for those parties assigning their interest in the Retained Funds to SECCRA.[16]

An analysis regarding consideration rightly includes an examination of whether there was *valid* consideration. Generally, an agreement to forbear a lawsuit constitutes adequate consideration.[17] This is true regardless of whether or not the suit would have been successful.[18] However, "in order for the relinquishment of a claim against another to be valid consideration, the claim must be honest, genuine, advanced in good faith, and founded on some reasonable, tenable or plausible ground."[19]

Here, in addition to the recitation of consideration, the Court finds that SECCRA's forbearance constitutes valid consideration. SECCRA obtained a judgment against Mr. Lockhart arising out of Signature's use of the SECCRA

---

[14] *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1232 (Del. Ch. 2000).

[15] SECCRA's Response to BFI's Motion to Dismiss Ex. B (Acceptance of Assignment and Release).

[16] *Id.*

[17] *Hensel v. U.S. Elecs. Corp.*, 262 A.2d 648, 650 (Del. 1970).

[18] *Id.*

[19] *Id.*

facility. Accordingly, SECCRA's agreement not to pursue legal avenues to execute on its judgment would satisfy the necessary standard. If SECCRA sought to execute on its judgment, it would be genuine, honest, and advanced in good faith because SECCRA could be legally entitled to this amount from Mr. Lockhart. Moreover, because SECCRA has a valid and enforceable judgment against Signature's sole member, a claim to execute on that judgment could reasonably be expected to impact Signature. Therefore, SECCRA's release constituted valid consideration.

The fact that SECCRA did not independently obtain a judgment against Signature does not change this outcome. Courts generally are lenient in terms of finding that forbearance constitutes valid consideration.[20] The Delaware Supreme Court has found that a forbearance constituted valid consideration even when the claim was doubtful as long as the party brought the claim in good faith.[21] Here, given the relationship between Mr. Lockhart and Signature, SECCRA could attempt to execute its judgment against Mr. Lockhart in a manner impacting Signature.[22] Therefore, by releasing Signature "from all claims and demands, rights and causes of action of any kind," SECCRA gave up its legal right to seek to execute on its judgment against Signature's sole member in a way that would impact the company's operations. This constitutes sufficient forbearance to generate valid consideration.

---

[20] *Albany Nat. Bank of Laramie v. Dodge*, 285 P. 790, 795 (Wyo. 1930). Courts find forbearance to be valid consideration as long as the claim is not clearly groundless. *E.g.*, *Sellars v. Jones*, 175 S.W. 1002, 1003 (Ky. 1915). Anything short of a clearly groundless suit constitutes adequate consideration as long as the claim . . . is asserted in good faith." *Id.*

[21] *Equitable Tr. Co. v. Hollingsworth*, 49 A.2d 325, 327 (Del. 1946).

[22] One manner in which SECCRA could seek to execute its judgment against Mr. Lockhart that could impact Signature's operations is by obtaining a charging order from a court against the limited liability company. 6 *Del. C.* § 18-703.

Furthermore, BFI's argument that Mr. Lockhart did not have an interest in the Retained Funds or the purchase price is untenable. Mr. Lockhart is Signature's sole member. As this limited liability company's sole member, any profits Signature obtains benefit Mr. Lockhart. Therefore, Mr. Lockhart has an interest in BFI releasing the Retained Funds to Signature as the modification agreement required. Additionally, the course of conduct between BFI, Signature, and Mr. Lockhart evidences the fact that BFI believed that Mr. Lockhart did in fact have an interest in the Retained Funds. As Mr. Lockhart had an interest in the Retained Funds, he was able to assign that interest to a third party.

BFI argues that even if valid consideration supported this assignment, the Court cannot enforce it. Namely, it argues that *Paul v. Chromalytics Corp.* controls this case.[23] In *Paul*, the Superior Court confronted an assignment clause which stated that "any assignment of this Agreement or the rights hereunder by Chemalytics without the written consent of Spex *shall be void*."[24] There, the court held that Spex's subsequent assignment to Mr. Paul was void, and therefore, Mr. Paul obtained no rights pursuant to the assignment agreement.[25] BFI maintains that the Court should reach the same outcome here. The Court disagrees however, because the assignment clause at issue here does not contain language expressly voiding assignments. Instead the clause merely states that the parties cannot assign their rights under the contract.[26] For the following reasons, this distinction is more than just form and requires a different result.

---

[23] 343 A.2d 622 (Del. Super. Ct. 1975).

[24] *Id.* at 625 (emphasis added).

[25] *Id.* at 626.

[26] SECCRA's Opening Brief Ex. A (Purchase Agreement).

10

While Delaware courts recognize the validity of clauses limiting a party's ability to subsequently assign its rights,[27] courts generally construe such provisions narrowly because of the importance of free assignability.[28]   Accordingly, the modern approach to assignment clauses is to distinguish between the *power* to assign and the *right* to assign.[29]

When a provision restricts a party's *power* to assign, it renders any assignment void.[30]   However, in order for a court to find that a contract's clause prohibits the *power* to assign, there must be express language that any subsequent assignment will be void or invalid.[31]   Without such express language, the contract merely restricts the *right* to assign.[32]   When a contract limits a party's *right* to assign instead of the *power* to do so, the assignment is valid and enforceable but generates a breach of contract action that the non-assigning party may bring against the party assigning its interest.[33]

Distinguishing between restricting the *right* and *power* to assign rights under a contract finds support in a majority of jurisdictions[34] and is the approach taken in the Restatement (Second) of Contracts.[35]   The majority of jurisdictions use this

---

[27] *E.g.*, *Paul v. Chromalytics Corp.*, 343 A.2d 622, 625 (Del. Super. Ct. 1975).

[28] *Rumbin v. Utica Mut. Ins. Co.*, 757 A.2d 526, 531 (Conn. 2000).

[29] *E.g.*, *Bel-Ray Co. v. Chemrite (Pty.) Ltd.*, 181 F.3d 435, 442 (3d Cir. 1999).

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *See Rumbin*, 757 A.2d at 531–33 (identifying the jurisdictions that follow this approach).

[35] Restatement (Second) of Contracts § 322(2).

approach which balances the desire for free assignability while still protecting the obligor by recognizing a cause of action for a breach of contract.[36]

Rather than directing that any assignment would be void, the anti-assignment provision found in the Purchase Agreement merely states that

> [t]his Agreement **may not be assigned (except by operation of Law)** or otherwise transferred without the express written consent of Seller and Buyer (which may be granted or withheld in the sole and absolute discretion of Seller and Buyer); provided, however, that Buyer may assign this Agreement to an Affiliate of Buyer or any successor of Buyer to the Business without the consent of Seller or Member.[37]

Applying the Restatement approach to this provision, the anti-assignment clause in the Purchase Agreement merely restricted the *right* to assign rights under the contract. This language does not manifest an intent to prohibit the *power* to assign.[38] Moreover, the provision itself evidenced that certain assignments would be valid even without the parties' consent.[39] This is further evidence that this clause did not restrict the parties' *power* to assign but merely their *right* to do so. While Signature's and Mr. Lockhart's subsequent assignment to SECCRA

---

[36] The Superior Court in *SLMSoft.com, Inc. v. Cross Country Bank* applied the Restatement approach to an assignment clause. However, the Court finds that the *SLMSoft.com, Inc.* decision did not correctly apply the entire provision. *See* Restatement (Second) of Contracts § 322(2)(c).

[37] SECCRA's Opening Brief Ex. A (Purchase Agreement)(emphasis added).

[38] *Compare Bel-Ray Co.*, 181 F.3d at 442 (holding that to restrict the *power* to assign, a contract must use language such as the assignment will be void or invalid, or language such as "the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment") *with SLMSoft.com, Inc.*, 2003 WL 1769770, at *9 (holding that the language found in a contract's anti-assignment clause provision which stated "[t]his agreement may not be assigned by either party . . . ." was a restriction on the *right* to assign and therefore the subsequent assignment was valid and enforceable).

[39] The provision allowed assignments by **operation of law** without the parties consent. SECCRA's Opening Brief Ex. A (Purchase Agreement).

constituted a breach of contract, the assignment is not void. It remains an enforceable assignment.[40]

BFI also argues that if the assignment is enforceable, SECCRA does not have a right to sue it as the obligor. Instead, BFI maintains that SECCRA can only sue Signature as the assignor. In support of this argument, BFI points to *SLMSoft.com, Inc. v. Cross Country Bank*.[41] In that case, the court confronted an assignment clause with similar language as that found in the Purchase Agreement at issue here, and after applying the Restatement approach, determined that it was a valid and enforceable assignment.[42] However, the court also held that the original obligor was only liable to the original assignor, and subsequent assignees could only sue the original assignor not the obligor.[43] Therefore, BFI argues that SECCRA can only sue Signature not BFI.

The Court disagrees with this argument. The *SLMSoft.com, Inc.* decision relied on the *Paul* decision for the proposition that the subsequent assignee can only sue the assignor and not the obligor.[44] This Court does not agree that the *Paul* decision supports that result. In *Paul*, the circumstances were factually dissimilar from the circumstances in the *SLMSoft.com, Inc.* case. Namely, the assignment clause in *Paul* specifically provided that any subsequent assignment would be

---

[40] In the Court's decision regarding BFI's motion to dismiss, it indicated that the *Paul* decision and the Restatement approach were incompatible. Upon further review, the Court recognizes that the *Paul* decision is compatible with the Restatement approach. The "void" language found in the assignment provision in *Paul* indicates a restriction on the *power* to assign and would constitute a manifestation of the parties' intent to avoid the default approach taken in the Restatement provision. The Court is convinced that the outcome of the *Paul* decision would be the same upon application of the Restatement's approach.

[41] *Id.* at *10.

[42] *Id.* at 9.

[43] *Id.* at 10.

[44] *Id.* at 10 n.68.

13

*void*.[45]  In contrast, the clause in *SLMSoft.com, Inc.* did not contain any comparable language.

This factual distinction calls into question the proposition that the assignee can only sue the assignor and not the obligor when an assignment is valid and enforceable as opposed to void.  The *Paul* decision held that the assignment was void and therefore unenforceable.[46]  Accordingly, the court then determined that the assignee, Paul, did not have a claim against the obligor, Chromalytics.[47]  Given that the assignment was void and unenforceable, it logically follows that the assignee would not have a cause of action against the obligor.  However, the same proposition does not logically follow in either *SLMSoft.com, Inc.* or the case at hand.  Moreover, the language of the relevant Restatement provision, which the Court adopts, makes it clear that the assignee has rights against the obligor.[48]  Since the parties have not identified any other applicable relevant case law other than the *Paul* and *SLMSoft.com Inc.* decisions, the Court finds that SECCRA obtained an interest in the Retained Funds through the assignment and therefore has the right to sue BFI to enforce the modification agreement.  To the extent the decision in *SLMSSoft.com Inc.* would require a different result, the Court does not adopt its reasoning.

In a further attempt to avoid this assignment, BFI also argues that the assignment to SECCRA constituted champerty, and therefore, the Court cannot enforce the assignment.  In this regard, BFI argues that SECCRA has no interest in the Purchase Agreement and therefore has no interest in the Retained Funds.  In response, SECCRA argues that it has an interest in the Retained Funds.

---

[45] *Paul v. Chromalytics Corp.*, 343 A.2d 622, 625–26 (Del. 1975).

[46] *Paul*, 343 A.2d at 626.

[47] *Id.*

[48] Restatement (Second) of Contracts § 322(2)(c).

The Court finds that the assignment at issue does not constitute champerty. Delaware has long defined a champertous cause of action as "an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it, dividing the proceeds with the owner, if they prevail; the champertor to carry on the suit at his own expense."[49] This doctrine does not apply "where the assignee has some legal or equitable interest in the subject matter of the litigation *independent* from the terms of the assignment under which the suit was brought."[50] Champtery was developed "to prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of law."[51]

Here, SECCRA had a legal interest in obtaining the Retained Funds *independent* of the assignment. Under the modification agreement, BFI, Signature, and Mr. Lockhart created the Retained Funds to protect BFI from any losses arising from the SECCRA claim. Once BFI obtained a release of liability for the SECCRA claim, and after BFI offset any losses it incurred as a result of the SECCRA dispute, the modification agreement required BFI to distribute the money to Signature. As Signature's sole member, Mr. Lockhart would be entitled to the profits of Signature including any amount of the Retained Funds that constituted a profit. However, SECCRA obtained a judgment against Mr. Lockhart for the unpaid tipping fees. Therefore, SECCRA could attempt to obtain any money that Mr. Lockhart received in order to satisfy its judgment.

---

[49] *E.g.*, *Gibson v. Gillespie*, 152 A. 589, 593 (Del. Super. Ct. 1928).

[50] *Hall v. State*, 655 A.2d 827, 829 (Del. Super. Ct. 1994).

[51] 14 Am. Jur. 2d *Champerty, Maintenance, Etc.* §1 (2017).

15

While BFI argues that this case is similar to *Street Search Partners, L.P. v. Ricon International L.L.C.*,[52] the Court disagrees.  In *Street Search Partners*, the plaintiff provided a loan to Ricon International (hereinafter "Ricon") for Ricon to re-loan the money to Enviro Board Corp. (hereinafter "Enviro Board").[53]  Enviro Board failed to repay the loan to Ricon which caused Ricon to default on its loan to Street Search Partners.[54]  Street Search Partners then sued both companies.[55]  However, after suffering financial difficulties, Street Search Partners assigned its interest in the lawsuit to A&R.[56]  Enviro Board sought dismissal on the grounds of champerty.[57]  In response, A&R argued that it had an interest in the lawsuit because of its position as an investor in Safe Street Advisors, which managed Safe Street Partnership.[58]  A&R claimed that its interest was in recovering "funds that may include investment principle it provided."[59]  The court ruled that this assignment was champertous because A&R as an investor, once removed, did not have a legal interest in the loan.[60]

Here, SECCRA's interest in the Retained Funds is not as attenuated as that of A&R's interest in *Street Search Partners, L.P.*  In the case at hand, SECCRA's interest in the Retained Funds arose because of its judgment against Mr. Lockhart.  A Pennsylvania court definitively determined Mr. Lockhart's liability to SECCRA.  As a result of this judgment, SECCRA is legally entitled to pursue any money Mr.

---

[52] 2006 WL 1313859, at *3–4 (Del. Super. Ct. May 12, 2006).

[53] *Id.* at *1.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at 3.

[58] *Id.* at 4.

[59] *Id.*

[60] *Id.*

Lockhart obtains, including any money he receives as the sole member of Signature, to execute on its judgment. Therefore, this case is dissimilar to *Street Search Partners* and the Court holds that Signature's and Mr. Lockhart's assignment of rights to SECCRA was not champertous. Instead, this assignment is valid and enforceable.

### B. SECCRA is entitled to the Retained Funds, but BFI is entitled to offset its losses by the Retained Funds in an amount not to exceed $50,000.

SECCRA claims that because it is entitled to the Retained Funds but BFI refuses to relinquish the money, BFI is unjustly enriched. In response, BFI argues that SECCRA is unable to establish the elements of an unjust enrichment claim because it is not entitled to the Retained Funds. Moreover, BFI argues that its refusal to provide SECCRA with the *full* $50,000 is justified. Pursuant to the modification agreement, BFI maintains that it may offset any losses it incurs. Accordingly, as BFI incurred losses (as defined in the Purchase Agreement), the company contends that it is allowed to deduct its losses from the Retained Funds before relinquishing the remaining portion.

Both parties agree that SECCRA is required to show that there is "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law" in order to establish an unjust enrichment claim.[61] While BFI argues that there is not an impoverishment because SECCRA is not entitled to the Retained Funds, as discussed above, this Court finds that SECCRA is legally entitled to the Retained Funds. However, the Court also finds that BFI is justified

---

[61] *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999).

17

in retaining at least a portion, if not all, of the funds. Therefore, SECCRA fails to establish a valid unjust enrichment claim.

The modification agreement specifically states that "Buyer shall transfer to Seller . . . *any portion of the Retained Funds not expended in connection with any Losses incurred by Buyer*."[62] The Purchase Agreement defines Losses broadly as

> Liabilities, claims, damages, Actions, demands, assessments, adjustments, penalties, losses, costs and expense whatsoever (including court costs, reasonable attorneys' fees and expenses of investigation), whether equitable or legal, matured or contingent, known or unknown, foreseen or unforeseen, ordinary or extraordinary, patent or latent.[63]

The modification agreement does not provide any limiting language for the definition of losses. Instead, it provides that "Buyer shall be permitted to retain the Retained Funds as security for any Losses that Buyer may incur in connection with the *SECCRA Claim or otherwise*."[64] The language in these provisions is clear and unequivocal: BFI is entitled to deduct from the Retained Funds the losses (as defined by the Purchase Agreement) incurred as a result of the SECCRA Claim or otherwise. As the contractual provisions are clear and unambiguous, the terms' plain meaning governs.[65]

Accordingly, the Court finds that BFI is entitled to offset from the Retained Fund any and all losses (as defined in the Purchase Agreement) that it incurred. The Purchase Agreement's definition of Losses is broad. The legal expenses BFI incurred as a result of the garnishment proceeding initiated by SECCRA were

---

[62] SECCRA's Opening Brief Ex. D (November 29, 2011 Modification Agreement) (emphasis added).

[63] SECCRA's Opening Brief Ex. A (Purchase Agreement).

[64] SECCRA's Opening Brief Ex. D (November 29, 2011 Modification Agreement) (emphasis added).

[65] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorist Ins. Co.*, 616 A.2d 1192, 1195–96 (Del. 1992).

clearly a SECCRA Claim, and therefore, the company is entitled to offset its losses in that amount. Moreover, the Court finds that the present litigation arises out of the SECCRA Claim and the contract permits BFI to offset any losses incurred as a result of this dispute. Even if this were not in relation to the "SECCRA Claim," the contract's terms would still permit the company to offset its losses based on the broad language in the provision creating the Retained Funds. Namely, this provision allows BFI to offset its losses incurred in connection with the SECCRA Claim *or otherwise*. The amount BFI can offset, however, shall not exceed $50,000. After BFI deducts its losses, it will be required to relinquish the remaining amount, if any, to SECCRA.

## V. Conclusion

For the reasons set forth above, SECCRA's motion for summary judgment is Granted in part and Denied in part. Conversely, BFI's summary judgment motion is Denied in Part and Granted in Part. SECCRA validly obtained Signature's and Mr. Lockhart's interest in the Retained Funds, and is therefore entitled to monies from that fund after BFI deducts any losses incurred as a result of the SECCRA claim. This permissible offset includes the undisputed $6,637.50 for BFI's legal expenses in the previous garnishment action and the losses incurred in the present litigation. BFI shall submit verified support for its alleged losses within 10 days. SECCRA may file a response, if any, within 10 days thereafter. The Court will then issue a final order.