**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CHARLIE JAVICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2022-1179-KSJM |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| JPMORGAN CHASE & CO., and TAPD, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS' APPLICATION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

1.      This order resolves the defendants' application for certification of interlocutory appeal from a June 27, 2023 order (the "Order") that implemented a May 8, 2023 telephonic bench ruling (the "Bench Ruling").  The Bench Ruling and Order interpret a merger agreement, corporate bylaws, and Section 145 of the Delaware General Corporation Law, holding that the plaintiff was entitled to advancement of legal expenses arising out of fraud investigations.  Although the Bench Ruling resolved a substantial issue of material importance, this order denies the application because the benefits of interlocutory appeal do not outweigh the costs.

2.      Plaintiff Charlie Javice is the former CEO of TAPD, LLC ("Frank"), a software company that assists college students in finding and applying for financial aid.[1] JPMorgan Chase & Co. acquired Frank in 2021 through a wholly owned subsidiary,

---

[1] Frank's former Chief Growth Officer, Olivier Amar, brought a separate action for advancement arising out of similar circumstances.  *See* C.A. No. 2023-0040-KSJM.  The Bench Ruling also resolved Amar's entitlement to advancement.

Defendant JPMorgan Chase Bank, N.A. ("JPMorgan Bank"). Before closing, Javice executed a resignation letter that released certain claims against the defendants (the "Resignation Letter"). The Resignation Letter contained a broad release of claims with carve-outs for certain accrued benefits and indemnification rights. The merger agreement also contained language carving out indemnification rights for certain actions involving a breach of the merger agreement, but the parties dispute the extent of that carve-out.

3. After closing, JPMorgan Bank began to question the legitimacy of the customer list that, in the course of merger negotiations, Javice had represented was accurate. JPMorgan Bank launched an investigation into the customer list (the "Fraud Investigation"), and later terminated Javice for cause. Javice demanded advancement and indemnification from the defendants in connection with the Fraud Investigation, and the defendants rejected the demand.

4. The Fraud Investigation spurred a wave of litigation, both in this court and elsewhere. Javice brought this action on December 20, 2022, seeking advancement of her expenses in the Fraud Investigation. Two days later, on December 22, JPMorgan Bank filed a federal action in Delaware against Javice and several of Javice's trust entities (the "Federal Action"). In the Federal Action, JPMorgan Bank asserts claims of fraud and securities fraud for representations the plaintiffs caused Frank to make during merger negotiations. Javice demanded advancement in connection with the Federal Action, and the defendants rejected the demand.

5.	Javice filed this suit to enforce her advancement rights, and the parties stipulated to resolve the issue of Javice's entitlement to advancement on cross-motions for summary judgment.

6.	When cross-moving for summary judgment, the defendants argued that the merger agreement, Frank's bylaws, and the Resignation Letter collectively worked to waive any advancement rights Javice held before the merger. The Bench Ruling rejected these arguments.

7.	The court reasoned that Javice was not a party to the merger agreement containing the waiver language on which the defendants relied. Javice was at most a third-party beneficiary to certain provisions. Although contracting parties can intend to confer benefits to third parties and create a contractual scheme for claiming those benefits,[2] contracting parties may not unilaterally eliminate vested rights of third parties. The court acknowledged that a covered person may waive his or her own vested rights through private ordering, and the defendants argued that Javice had done so through her

---

[2] For example, a third-party beneficiary is bound by forum selection and other similar provisions when the third-party beneficiary seeks to enforce a right under the contract. *See, e.g.*, *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 431 (Del. Ch. 2007) ("[A] court will not allow a third-party beneficiary to cherry-pick certain provisions of a contract which it finds advantageous in making its claim, while simultaneously discarding corresponding contractual obligations which it finds distasteful."); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001) ("[W]hether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary."); *see also* John Coyle & Robin Effron, *Forum Selection Clauses, Non-signatories, and Personal Jurisdiction*, 97 Notre Dame L. Rev. 187, 195 (2021) ("If a non-signatory has directly benefitted from one part of the agreement . . . he is estopped from arguing that he is not bound by a different provision in that same agreement.").

Resignation Letter. The court rejected this argument, holding that the language of her Resignation Letter did not accomplish what the defendants intended. For those reasons, the Bench Ruling determined that Javice was entitled to advancement and ordered the parties to confer on an order establishing a protocol for submitting advancement invoices consistent with this court's decision in *Danenberg v. Fitracks*.[3]

8. The court entered the parties' stipulated *Fitracks* Order on June 27, 2023,[4] and the defendants moved for certification of interlocutory appeal on June 29, 2023.[5] Javice filed a brief in opposition on July 10, 2023.[6]

9. Supreme Court Rule 42 establishes a two-step test for determining whether to certify interlocutory appeal. The court must first determine whether "the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[7] If the substantial-issue requirement is met, the court will then analyze eight factors concerning whether "there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[8] Rule 42 cautions that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal

---

[3] C.A No. 2022-1179-KSJM, Docket ("Dkt.") 61 ("Bench Ruling Tr.") at 31:20–32:5 (citing *Danenberg v. Fitracks*, 58 A.3d 991 (Del. Ch. 2012); *Konstanino v. AngioScore, Inc.*, 2015 WL 5770582 (Del. Ch. Oct. 2, 2015); *Holley v. Nipro Diagnostics, Inc.*, 2015 WL 4880418 (Del. Ch. Aug. 14, 2015), *Thompson v. Orix USA Corp.*, 2016 WL 3226933 (Del. Ch. June 3, 2016)); Dkt. 67 (*Fitracks* Order).

[4] Dkt. 68.

[5] Dkt. 69, Defs.' Appl. for Certification of Interlocutory Appeal ("Defs.' Appl.").

[6] Dkt. 72 ("Pl.'s Opposition").

[7] Supr. Ct. R. 42(b)(i).

[8] *Id.* 42(b)(ii); *see id.* 42(b)(iii)(A)–(H).

4

procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[9] This language of Rule 42 serves as an interpretive principle, requiring that the court interpret the factors such that interlocutory appeals are the exception and not routine.[10]

10. "The 'substantial issue' requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case, and not to collateral matters."[11] A pair of Rule 56 cross-motions for summary judgment on the central issue of the plaintiff's entitlement to advancement constitute merits-based motions and are substantial.

11. Because the substantial-issue requirement is satisfied, the analysis turns to whether there are benefits outweighing the costs of an interlocutory appeal.[12] Rule 42 supplies eight factors to consider when conducting this balancing analysis. Of those eight factors, the defendants rely on the following five:

> (A) The interlocutory order involves a question of law resolved for the first time in this State;

---

[9] *Id.* 42(b)(ii).

[10] *See also id.* 42(b) (stating that "[i]f the balance is uncertain, the trial court should refuse to certify the interlocutory appeal"); 2 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 18.04[c] (2d ed. 2022).

[11] *Sprint Nextel Corp. v. iPCS Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008); *accord. Castaldo v. Pittsburgh-Des Moines Steel Co.*, 301 A.2d 87, 87 (Del. 1973); *TowerHill Wealth Mgmt., LLC v. Bander Fam. P'ship, L.P.*, 2008 WL 4615865, at *2 (Del. Ch. Oct. 9, 2008).

[12] *See* Supr. Ct. R. 42(b)(ii); Supr. Ct. R. 42(b)(iii)(A)–(H).

(B) The decisions of the trial courts are conflicting upon the question of law;

(C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order;

(G) Review of the interlocutory order may terminate the litigation; or

(H) Review of the interlocutory order may serve considerations of justice.[13]

12. Of these five factors, only (G) provides support for certifying an interlocutory appeal. The others either weigh against it or are neutral.

13. Factor (A) does not support the defendants' application. The defendants argue that the Bench Ruling broke new ground in two ways. First, they say that the decision is inconsistent with *Davis v. EMSI Holding Company*, on the issue of "whether advancement is available for fraudulent breaches of an acquisition agreement."[14] In *Davis*, the Court of Chancery held that the "clear and unambiguous terms" of a sale and purchase agreement did not divest certain directors and officers of the selling company of their advancement and indemnification rights, even though the directors and officers had defrauded the buyer into entering the acquisition.[15] The defendants here state that they had studied *Davis* and attempted to avoid its outcome when drafting the relevant merger

---

[13] Supr. Ct. R. 42(b)(iii)(A), (B), (C), (G), (H). By ignoring the other three, the defendants concede that those factors weigh against or are neutral as to interlocutory appeal.

[14] Defs.' Appl. ¶ 25 (discussing *Davis v. EMSI Hldg. Co.*, 2017 WL 1732386 (Del. Ch. May 3, 2017)).

[15] *Davis*, 2017 WL 1732386, at *1.

6

agreement terms.[16] The defendants reason that the Bench Ruling extended beyond the limits of *Davis*, throwing their transactional planning off-kilter.

14. This argument fails because it manufactures a gap between *Davis* and the Bench Ruling. The Bench Ruling acknowledged that advancement and indemnification provisions like those at issue here have come into greater use since *Davis*. And the court did not rule out the possibility that transactional planners could draft provisions to avoid the effect of *Davis*. The court simply held that the post-*Davis* efforts to secure proper waivers were "not well implemented *in this case*."[17] As far as waiver is concerned, the Bench Ruling applied existing law and did not wade into new territory.

15. The defendants next argue that the court's deployment of a "clear and unequivocal" standard for analyzing waiver under the Resignation Letter was a legal innovation. The defendants argue that the "clear and unequivocal" standard is reserved for the waiver of *statutorily* created rights, unlike what defendants describe as purely contractual rights at issue here.[18]

16. This argument fails for a few reasons. As an initial matter, the court adopted Javice's interpretation of the plain language of the Resignation Letter as the primary basis for finding that it did not act as the defendants intended. After endorsing Javice's reading of the "plain language" of the Resignation Letter, the Court note that "[a]t the very least,

---

[16] Defs.' Appl. ¶¶ 22–24.

[17] Bench Ruling Tr. at 29:13–15 (emphasis added).

[18] Defs.' Appl. ¶¶ 22–24; *see also* Bench Ruling Tr. at 26:15–17 (stating that the Resignation Letters "did not clearly and unequivocally waive [the plaintiffs'] right to advancement from Frank's bylaws.").

the provision does not provide the kind of clear and unequivocal waiver that would be required for Plaintiffs to validly relinquish their advancement rights."[19]  The defendants focus exclusively on concerns about this back-up ruling and do not address the primary ruling.

17.     Next, the court correctly applied the "clear and unequivocal" standard.  "It is well settled in Delaware that contractual requirements or conditions may be waived."[20] "Under Delaware law, a waiver is 'the voluntary and intentional relinquishment of a known right.'"[21]  The Delaware Supreme Court has held that waiver has three elements: "(1) there is a requirement or condition to be waived, (2) the waiving party must know of the requirement or condition, and (3) the waiving party must intend to waive that requirement or condition."[22]   "A waiver may be express or implied, but either way, it must be unequivocal."[23]   Delaware's waiver doctrine does not support the statutory/contract distinction the defendants draw, as Delaware courts have deployed the "clear and unequivocal" standard when evaluating waiver of non-statutory rights in the contract and tort contexts.[24]  Furthermore, to the extent the "clear and unequivocal" standard applies

---

[19] Bench Ruling Tr. at 23:8–12, 25:20–23.

[20] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005).

[21] *Dirienzo v. Steel P'rs Hldgs. L.P.*, 2009 WL 4652944, at *4 (Del. Ch. Dec. 8, 2009) (quoting *Realty Growth Invs. v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)).

[22] *AeroGlobal*, 871 A.2d at 444.

[23] *Dirienzo*, 2009 WL 4652944, at *4.

[24] *See, e.g.*, *XRI Inv. Hldgs. LLC v. Holifield*, 283 A.3d 581, 649–50 (Del. Ch. 2022) (reading *Paul v. Chromalytics Corp.*, 343 A.2d 622 (Del. Super. 1975) to state that waiver must be "sufficiently clear, distinct, or unequivocal" as a defense to contract); *Hrycak v. Public Storage, Inc.*, 2019 WL 4751522, at *4 (Del. Super. Sept. 30, 2019) (stating that a

8

exclusively or with greater force in the context of statutory rights, the contractual rights at issue operate against a statutory background—Javice based her entitlement to advancement in part on law interpreting Section 145 of the Delaware General Corporation Law.[25] The defendants have not shown that factor (A) supports their application.

18. Factor (B) does not weigh in favor of interlocutory review. The defendants argue that the Bench Ruling conflicts with three cases. The first is *Davis*, which the court addressed above.

19. The second is *Chicago Bridge & Iron Company N.V. v. Westinghouse Electric Company LLC*.[26] The defendants read *Chicago Bridge* to stand for the common-sense principle that courts should "read the specific provisions" of a merger agreement "in light of the entire contract[.]"[27] But *Chicago Bridge* did not engage with the rights of third-party beneficiaries, nor did it address the proper standard of review when evaluating

---

contractual "release of prospective negligence must be crystal clear and unequivocal to insulate a party from liability") (internal quotation marks omitted); *AeroGlobal*, 871 A.2d at 444 (holding that the "facts relied upon to prove waiver must be unequivocal" in deciding whether a party intended to waive a "timing requirement" created by a letter of intent for a stock acquisition); *Simon-Mills II, LLC v. Kan Am USA XVI Ltd. P'rship*, 2017 WL 1191061, at *34 (stating that "[i]t is well-settled that a party may waive her contractual rights" and that the "standard for demonstrating waiver is 'quite exacting;' because waiver is redolent of forfeiture, 'the facts relied upon to demonstrate waiver must be unequivocal.'" (quoting *Amirsaleh v. Board of Trade of City of New York, Inc.*, 27 A.3d 522, 529 (Del. 2011) (internal quotation marks omitted))).

[25] *See* Dkt. 26 (Pl.'s Opening Br.) at 43–45 (arguing that 8 *Del. C.* § 145(f) prevents persons from eliminating indemnification or advancement rights created in corporate charters or bylaws under these circumstances).

[26] 166 A.3d 913 (Del. 2017).

[27] *Id.* at 913–14.

9

waiver-related issues. It also did not concern advancement rights of corporate directors or officers, instead engaging with contractual obligations between buyers and sellers of corporate assets.[28] The principle the defendants cite from *Chicago Bridge*—that courts should give effect to the intent of contracting parties—is non-controversial, and nothing in the Bench Ruling contradicts it. The Bench Ruling simply addresses additional, well-known considerations that arise when contracting parties attempt to create or eliminate third-party rights.

20. The third case is *Kokorich v. Momentus Inc.*, which Vice Chancellor Zurn decided shortly after the Bench Ruling.[29] The defendants emphasize the distinction the Vice Chancellor drew between permissive and mandatory advancement, stating that contractual advancement rights "may be released, like any other contractual right."[30] The defendants view *Kokorich* to say that advancement waivers warrant a lower level of scrutiny than "clear and unequivocal."[31] But the defendants quote *Kokorich* out of context. There, the plaintiff argued that he had a statutory right to mandatory advancement and indemnification under subsections 145(a), (b), and (e).[32] The court rejected these arguments, emphasizing that, outside the narrow confines of subsection 145(c), Section 145 did not impart free-standing advancement or indemnification rights and that persons

---

[28] *See id.* at 921.

[29] 2023 WL 3454190 (Del. Ch. May 15, 2023).

[30] *See* Defs.' Appl. ¶ 31 (quoting *id.* at *10).

[31] *See* Defs.' Appl. ¶¶ 31–32.

[32] *Kokorich*, 2023 WL 3454190, at *10.

needed a contractual provision in a charter, bylaws, or elsewhere to have those rights.[33]

Here, the Bench Ruling neither gave Javice a free-standing right to advancement or indemnification, nor did Javice argue for one. The language the defendants cite in *Kokorich* is unrelated to the Bench Ruling.

21.     In sum, there is no conflict of authorities governing the Bench Ruling, and factor (B) does not weigh in favor of interlocutory review.

22.     Factor (C) does not weigh in favor of interlocutory review. The defendants state that the Bench Ruling addresses a statutory issue—whether Section 145(f) of the Delaware General Corporation Law applies to waivers related to merger disputes.[34] But factor (C) is not satisfied every time a trial court decides an issue of statutory interpretation. The critical issue is whether that statutory interpretation "should be" settled by the Supreme Court in advance of a final order.[35] Here, the defendants have not explained why a final decision on the proper reach of Section 145(f) must precede an ultimate resolution of JPMorgan Chase's advancement obligations or any further dispute on the reasonableness of fees. The statutory dimension of the Bench Ruling does not warrant rushing the appeal.

---

[33] *Id.*

[34] Defs.' Appl. ¶¶ 34–35 (discussing 8 *Del. C.* § 145(f) ("A right to indemnification or to advancement of expenses arising under a provision of the certificate of incorporation or a bylaw shall not be eliminated or impaired by an amendment to or repeal or elimination of the certificate of incorporation or the bylaws after the occurrence of the act or omission that is the subject of the civil, criminal, administrative or investigative action, suit or proceeding for which indemnification or advancement of expenses is sought, unless the provision in effect at the time of such act or omission explicitly authorizes such elimination or impairment after such action or omission has occurred.")).

[35] Supr. Ct. R. 42(b)(iii)(C).

11

23.     Factor (G) supports interlocutory review.  Were the Supreme Court to reverse and hold that Javice waived her advancement and indemnification rights, the litigation would terminate.[36]

24.     Factor (H) does not weigh in favor of interlocutory review.  To invoke considerations of justice, the defendants rehash arguments made elsewhere.  The defendants state that it is better to resolve "how to effectively carve out merger breach disputes from advancement and indemnification" sooner rather than later.[37]  But the court has already provided the guidance that such waivers should be clear and unequivocal.  The defendants argue that giving "full force and effect" to the merger agreement "will ensure a just result for all parties."[38]  But this argument merely appeals to the merits of the defendants' position, rather than demonstrating why interlocutory review is proper.  The defendants further state that prompt appellate review will resolve the purported tension between the Bench Ruling and *Chicago Bridge*.[39]  But for reasons the court has already explained, there is no tension to resolve.

---

[36] Javice argues that interlocutory appellate review would not terminate the litigation because she has "numerous other avenues to advancement unresolved by the Bench Ruling," including a separate indemnification agreement and the bylaws of each of JPMorgan Bank and JPMorgan Chase.  *See* Pl.'s Opposition ¶ 38.  But were the high court to construe Javice's Resignation Letter to waive *all* related rights, her additional claims would fail regardless of which instrument created those rights.

[37] Defs.' Appl. ¶ 37.

[38] *Id.* ¶ 38.

[39] *Id.* ¶ 39.

25.     Finally, beyond the eight Rule 42(b)(iii) factors, the defendants also argue that the benefits outweigh the costs of interlocutory review because it is "highly unlikely" that Javice will be able to repay any legal expenses advanced in the face of a reversal on appeal.[40]  This timing-based argument "ignores the frequency with which" advancement disputes arise before this court.[41]  Furthermore, Delaware policy favors making it "easier to turn the 'advancement spigot' on than to turn it off"[42]—creating an intentionally "lopsided dynamic favoring advancement claimants."[43]  In short, this court has previously rejected the defendants' timing-based argument, and will not revise its approach here.

26.     For the foregoing reasons, the defendants' Application for Certification of Interlocutory Appeal is denied.

/s/ Kathaleen St. J. McCormick

Chancellor Kathaleen St. J. McCormick
Dated: July 13, 2023

---

[40] *Id.* ¶¶ 21–22.

[41] *Sider v. Hertz Global Hldgs. Inc.*, 2019 WL 2501481, at *3 (Del. Ch. June 17, 2019).

[42] *Id.* (quoting *Sun-Times Media Gp., Inc. v. Black*, 954 A.2d 380, 402 (Del. Ch. 2008)); *see also Tafeen v. Homestore, Inc.*, 2005 WL 1314782, at *3 (Del. Ch. May 26, 2005) ("[T]he immediate advancement of fees fulfills a real and legitimate need of those who serve as directors and officers of Delaware corporations when faced with significant costs of defending legal actions against them.  Clearly, to be of any value to the executive or director, advancement must be made promptly, otherwise its benefit is forever lost because the failure to advance fees affects the counsel the director may choose and litigation strategy that the executive or director will be able to afford.  To grant Homestore's motion [to stay the advancement order pending appeal] would allow it to continue to be derelict in its contractual protection of its directors/officers, and that would force its directors/officers to compromise their own litigations in the face of cost concerns, a result that is clearly against Delaware's policy of resolving advancement issues as quickly as possible." (internal citations omitted)).

[43] *Hertz*, 2019 WL 2501481, at *3.

13